# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 04-CR-00325-FJG |
| BRENT MICHAEL BARBER, | ) | |
| Defendant. | ) | |

# ORDER

Currently pending before the Court are defendant's Motions in Limine (Docs. # 89, 91). The Court hereby rules as follows:

### DEFENDANT'S FIRST MOTION IN LIMINE

In its November 10, 2005 disclosure, the Government indicated that it intended to offer evidence of "other fraudulent real estate conduct that is similar to and close in time to the conduct charged in the indictment." The Government identified evidence relating to four allegations:

    A. Defendant's conduct regarding William Bates and Brent Gilbert.

    B. Defendant's conduct regarding 8118 Paseo, Kansas City, Missouri, a property formerly owned by Steven Effertz.

    C. Defendant's conduct regarding 2411 Benton Boulevard, Kansas City, Missouri, a property owned by Dan and Pam Fester.

    D. Defendant's submission of false tax returns to American Sterling Bank; First National Bank of Lee's Summit and First Community Bank.

Defendant states that to determine the admissibility of 404(b) evidence, the 8th Circuit utilizes a four part test: 1) it is relevant to a material issue in question other than the defendant's character; 2) the act is similar in kind and reasonably close in time to the crime charges; 3) there is sufficient evidence to support a jury finding that the

defendant committed the act and 4) the potential unfair prejudice does not substantially outweigh the probative value of the evidence.

The Government offers a different four step inquiry when considering whether 404(b) evidence should be admitted: 1) the evidence must be offered for a proper purpose; 2) the evidence must be relevant; 3) the probative value of the evidence must outweigh any potential for unfair prejudice to the defendant and 4) the jury must be instructed as to the limited purpose for which the evidence may be considered.

The Government states that it seeks to introduce in its case-in-chief three narrow instances of additional, relevant conduct to prove the defendant's specific intent to engage in fraud and to demonstrate conformance with regard to the defendant's plan, scheme and design. While the defendant custom tailored each fraud scheme to fit the particular circumstances, the Government argues that the defendant left numerous parallel footprints. By comparing transactions, patterns and hallmarks emerge.

### A. 8021 Summit, Kansas City, Missouri

This property was the subject of a foreclosure sale in April 2004. Following the sale, Barber obtained an assignment of rights in 8021 Summit. The Government contends that Barber obtained this assignment of rights by representing to Bates that it was Barber's company that had purchased the home at foreclosure. Barber then issued a check to Bates for $500.00 which was drawn on the account of KC Properties. The Government alleges that following Bates' assignment of rights to Barber, Bates learned that pursuant to the assignment, Barber had a potential interest in the approximately $20,000 in excess proceeds of the sale.

Defendant states that in the instant case, the evidence regarding 8021 Summit is not relevant to any issue in the current case. Defendant also states that it is not similar in kind because the Summit transaction was a post-foreclosure assignment of rights in a property that had already been sold, whereas the Locust transaction involved back to back sales of a property based on allegedly false information provided to title companies and a lender. Additionally, the Locust transaction occurred in early September 2004, 7 months before the Summit transaction. Additionally, the defendant states that this evidence should be excluded as it would be unduly prejudicial because the Government wants to introduce this evidence to show a sympathetic victim of the crime.

The Government has prepared a chart which shows specifically how the two transactions compare.

**Ruling:** The Court **DENIES** defendant's Motion in Limine on this issue. The Court finds that the circumstances surrounding this transaction are similar in both substance and also in time to the activities charged in the indictment. The Court also

2

finds that the probative value of the evidence outweighs any unfair prejudice to the defendant.

### B. 8118 Paseo, Kansas City, Missouri

Defendant states that in 1999, Barber forged the signatures of his attorney Steven Effertz and Effertz' wife on various documents, including a deed, forged a false verification of a mortgage and obtained funds in connection with the sale of 8118 Paseo to which he was not entitled.  Defendant states however that he was authorized to sell the property at 8118 Paseo, the signatures were ratified and that Mr. Effertz did not and does not today take issue with the distribution of the proceeds of the sale. Barber states that this transaction took place some six years ago and did not involve any alleged misrepresentations to lender or to title companies or sellers.  Barber states that even if these allegations were true, they are too dissimilar and too remote in time to the allegation charged.  Barber also states that the evidence would be unduly prejudicial.

The Government has created a chart which compares the two transactions.

**Ruling:** The Court **GRANTS** defendant's Motion in Limine with regard to this particular transaction.  The Court finds that it is not close in time, there is a sufficient dispute to affect a finding by the jury and the prejudicial impact of this evidence outweighs any probative value.

### C. 2411 Benton Boulevard, Kansas City, Missouri

The Government alleges that Barber made an offer to purchase 2411 Benton Boulevard in the name of KC Securities LLC for $58,000 form Dan and Pam Fester. The Festers agreed and entered into a sales contract with Barber.  However, the Government alleges that Barber did not close by expiration date in the contract and that Festers refused to extend the contract and instead raised the purchase price.  On or about June 2, 2004, Barber allegedly filed a lis pendens on the property.  Subsequently the Festers entered into a new contract with Barber which expired on June 15, 2004. According to the Government, Barber did not close on the property by the expiration date.  Barber argues that evidence that he failed to close on a real estate purchase prior to the expiration of the contract or that he filed a lis pendens on a property is not probative of intent, knowledge or absence of mistake regarding the charged crimes. Additionally, he argues that the alleged conduct is not similar in kind to the charged crimes.  Barber also states that the conduct is not relevant and is nothing more than a failed real estate purchase which bears no relationship to the crimes charged.

The Government has created a chart which specifically compares the two transactions.

**Ruling:** The Court **GRANTS** defendant's Motion in Limine on this transaction.

3

The Court finds that the probative value of this evidence is outweighed by the potential for confusion and unfair prejudice. Additionally, the Court finds that the evidence is not sufficiently similar to the actions charged in the indictment and is not sufficient to support a jury finding that the defendant committed the act.

> **D. The Alleged Submission of False Tax Returns to American Sterling Bank, First National Bank of Lee's Summit and First Community Bank**

Barber states that the alleged conduct is not similar in kind to the charged crimes. He states that there is no allegation in the indictment or in the proof in this case of submission of false tax returns to a financial institution or any person or entity. Barber states that there is no allegation that the alleged false tax returns referenced in the Government's disclosure were even submitted to a financial institution. Additionally, he argues that the evidence is removed in time from the charges in the indictment. The most recent allegedly false tax return is from 2000, with the oldest from 1994. None of the returns comes within the three years of the period of time covered by the indictment. He also argues that it is overwhelmingly prejudicial.

With regard to this evidence, the Government states that it will not offer this evidence in its case-in-chief, but instead as cross-examination if the defendant testifies and as possible rebuttal evidence.

**Ruling:** The Court **GRANTS** defendant's Motion in Limine on this issue. The Court finds that this evidence goes more to character, is not similar to the acts charged and the probative value is outweighed by the unfair prejudice to the defendant.

### **DEFENDANT'S SECOND MOTION IN LIMINE**

> **1. The Government Should Be Precluded from Introducing Any Evidence Regarding Mr. Barber's Alleged Promises to Sharice Livingston to Refinance 3741 Locust or to Purchase Additional Properties Subsequent to the Refinance of 3741 Locust.**

Defendant states that the Government is alleging that the defendant told Ms. Livingston that he would make the first payment for her on the mortgage at 3741 Locust and then would help her refinance the loan at 1.9% at Washington Mutual. He also allegedly told her that she would only have to pay $600.00 as a monthly mortgage. The Government is also alleging that Barber spoke with Livingston about purchasing six homes and that he told her she could buy them with no money down and he would find the tenants for these properties and manage them for her. The Defendant states that this information should be excluded because such representations would not support a claim for fraud or fraudulent misrepresentation directed against the alleged victims MILA and Finance America. Defendant states that these statements are merely puffery or

4

promises to perform in the future, which cannot constitute fraud, absent proof that the maker did not presently intend to perform.

The Government argues in response that this information is relevant because it is an intrinsic part of Transaction One, which is charged in Count One of the indictment. The Government states that this evidence helps to explain the circumstances, and is integral to the witnesses' account of the circumstances surrounding the transaction and the offense for which Barber is indicted.

**Ruling:** The Court agrees with the Government and therefore **DENIES** Defendant's Motion in Limine on this issue.


**2. The Government Should Be Precluded From Eliciting "Mirroring Hypotheticals" From Its Experts or Using Terminology Designed to Elicit Statements Concerning the Defendant's Mental State.**

Defendant states that the mental state or condition of a defendant in a criminal case, such as whether the defendant possessed the requisite intent, is an ultimate issue for the trier of fact. Additionally, the defendant states that the Government has indicated its intent to offer testimony through Sandra Thomas of MILA that certain aspects of the 3741 Locust transaction were indicative of "red flags of fraud." The defendant states that neither the Government nor its witnesses should be permitted to utilize the term "red flags of fraud," as this comment opines on the defendant's mental state and embraces an ultimate issue of fact.

The Government states that FRE 704(b) prohibits an expert witness from testifying that a defendant did or did not have the mental state or condition constituting an element of the crime charged. The Government states that this rule prohibits testimony only on the mens rea and does not prohibit testimony on any other issue, even if it embraces an ultimate issue to be decided by the jury. The Government states that Rule 704 does not prohibit expert testimony which will help the jury understand the evidence or determine a fact in issue. The Government states that it does not intend to ask its experts what the defendant's mental state was or whether by his actions he intended to defraud. Rather, they want to ask questions regarding the effect and result of conduct such as: 1) the effect and creation of a trust in the name of Rhonda Loeppke, 2) the result of such conduct; 3) the purpose or benefit of such a trust and 4) whether the trust served an estate planning or tax purpose. The Government states that it is not "direct expert testimony" concerning the defendant's mental state to ask whether certain actions in connection with a loan are red flags of fraud to a lender.

**Ruling:** The Court **DENIES** defendant's motion in limine on this issue. The Government's witnesses may testify to the effect and result to the defendant's conduct, but shall not use the phase "red flags of fraud."

5

Case 4:04-cr-00325-FJG   Document 111   Filed 11/25/05   Page 5 of 7

**3. The Government's Witnesses Should Be Precluded From Making Mention of Any Other Indictments, Criminal Investigations or Prior Arrests or Charges.**

The Government states that it does not intend to offer any testimony regarding the defendant's other indictments, criminal investigations or prior arrests.

**Ruling:** Defendant's Motion in Limine on this issue is hereby **GRANTED**.

**4. The Government Should Not Be Permitted to Introduce Any Witness Opinion Testimony Regarding the Rationale for Forming the Rhonda Loeppke Trust**

Defendant states that Edward Pendleton testified before the Grand Jury that he believed the purpose of the Trust was to disguise the end sale. Defendant state that this type of testimony from a lay witnesses concerning the rationale for creating the Trust and the Trust's role in the 3741 Locust transaction is impermissible. The defendant states that Mr. Pendleton testified that he did not prepare the Trust, nor did he read it prior to signing. Thus, defendant states that his opinion could not rationally be based on his own perception and is not admissible.

The Government states that many of its witnesses work in real estate and they know what comprises a normal transaction and what advantage there might be from utilizing a trust. The Government states that some of their witnesses refused to handle the transaction involving the trust and should be allowed to testify to the reasons for their refusal. The Government however states that it does not intend to ask Edward Pendleton his opinion regarding the purpose of the trust.

**Ruling:** The defendant's Motion in Limine on this issue is hereby **GRANTED**.

**5. The Government Should Be Precluded From Eliciting Any Testimony From Its Witnesses Regarding Prior Real Estate Transactions or Opportunities With Brent Barber.**

Defendant states that Nick Minks testified before the Grand Jury that he first heard of Mr. Barber and a real estate opportunity associated with Barber in late 1999 or early 2000. Minks testified that Barber told him that if one's credit was good, you could make a little extra money without risk or obligation. Minks stated that the real estate would be purchased using his credit, but that Barber would pay the down payment and closing costs. Defendant states that the Government should be precluded from introducing testimony or evidence relating to prior real estate transactions or opportunities as it is not relevant to the charges at issue.

The Government states that Barber approached Minks in 2000 with the proposal

6

that Minks invest in real estate, that Barber would obtain renters and maintain the properties and that Minks would have no expenses and would be paid by Barber for doing so. One of the properties which Minks purchased was 1013 Brookside in Raymore, Missouri. The Government states that this is the same property involved in Transaction Two of Count One, as well as Counts Two, Three and Four of the Indictment. The Government states that testimony from Minks regarding his dealings with Barber is part of the res gestae - and explains why Minks did not know he owned the property, explains why he was not living here, why Minks was not maintaining or paying the mortgage and how Barber's mother could be living in the house as a squatter without the owner taking any action. The Government states that this is not 404(b) evidence, but rather is intrinsic to the transaction.

**Ruling:** The Court **PROVISIONALLY GRANTS** defendant's Motion in Limine on this issue, unless the Government can show that Minks had an ownership interest at the time of Transaction Two.

## CONCLUSION

Therefore, the defendant's First Motion in Limine is hereby **GRANTED in PART and DENIED in PART** (Doc. # 89). Defendant's Second Motion in Limine is hereby **GRANTED in PART and DENIED in PART** (Doc. # 91).


Date: November 25, 2005　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　United States District Judge